FILED
December 18, 2024
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: Christian Rodriguez
     DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AMMER QADDUMI, § | |
| Plaintiff, § | |
| v. § | Cause No. 1:24-cv-1002-DII |
| § | |
| UNIVERSITY OF TEXAS AT AUSTIN, § | |
| UT PRESIDENT JAY HARTZELL, AND § | |
| UT PROVOST SHARON WOOD. § | |
| § | |
| Defendants. § | |

**VERIFIED SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

The University of Texas at Austin has suspended Ammer Qaddumi for engaging in protected First Amendment free speech. The University first unlawfully attempted to cancel a protest Mr. Qaddumi and others had planned for April 24, 2024, based solely on the protestors' political viewpoints. Then, even after Mr. Qaddumi attempted to comply with the University's directives to disperse, the University suspended him until August 2025 for appearing on campus with a student group it had singled out as representing an undesirable political stance.

Mr. Qaddumi is suing Jay Hartzell and Sharon Wood in their individual and official capacities for enforcing University rules, policies, and directives which, as applied to Mr. Qaddumi, are calibrated to chill protected speech and punish Mr. Qaddumi for his political beliefs, statements, and associations—all in blatant violation of the First Amendment. Mr. Qaddumi asks the court for declaratory and injunctive relief reinstating him as a student and enjoining the University from continuing to violate his rights.

**JURISDICTION AND VENUE**

1. Jurisdiction is proper in federal court because the claims arise under the U.S. Constitution and federal laws. 28 U.S. C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because the events complained of occurred in Travis County.

## PARTIES

3. Plaintiff Ammer Qaddumi is a student at the University of Texas who has been punished for the exercise of his First Amendment right of free speech.

4. Defendant Jay Hartzell is President of the University of Texas at Austin. Hartzell is sued in both his individual capacity and his official capacity as someone with authority to direct the administration and enforcement of the University's policies. In his official role, this Complaint also refers to him as "the University".

5. Defendant Sharon Wood is the former Vice President and Provost of the University of Texas at Austin, sued in her official and individual capacity.

## FACTS

6. On April 23, 2024, a student group named the Palestine Solidarity Committee (PSC) called on students to participate the following day in a demonstration protesting the University's investments into companies that profit from the genocide of Palestinians in Gaza.

7. Ammer Qaddumi is a student enrolled at the University of Texas at Austin and was among the organizers of this event.

8. As was noted in a report (ECF 1-1) issued the University's *Committee of Counsel on Academic Freedom and Responsibility*,[1] the PSC shared its proposed plan via social media:

---

[1] The *Committee of Counsel on Academic Freedom and Responsibility* (CCAFR) is an official organ of the University, composed of seven (7) tenured faculty members chosen at large from and by the voting members of the General Faculty, whose duties include "provid[ing] advice on, and investigat[ing] allegations of violations of… the exercise of academic freedom in teaching, scholarship and expression." *See* its official website available at https://facultycouncil.utexas.edu/a1-committee-counsel-academic-freedom-and-responsibility (last accessed August 25, 2024).

> **Call to Protest on Wednesday April 24**
>
> The protests were first called by the Palestine Solidarity Committee at UT, which put up an Instagram post announcing their planned events. Here is the text of the post:
>
>> Class is canceled.
>>
>> Join us Wednesday April 24th in walking out of class and RECLAIMING OUR SPACE as we demand DIVESTMENT NOW.
>>
>> We will be meeting at Greg Gym at 11:40 and marching to occupy the South Lawn.
>>
>> In the footsteps of our comrades at Columbia SJP, Rutgers-New Brunswick, Yale, and countless others across the nation, we will be establishing THE POPULAR UNIVERSITY FOR GAZA and demanding our administration divest from death.
>>
>> We will be occupying the space throughout the entire day, so be sure to bring blankets, food and water, face masks, and lots of energy.
>>
>> As a reminder please be sure to respect our space and listen to organizers in order to help keep us all safe
>
> In another post the same day, a schedule of planned activities was published by the protest organizers. Here are the named activities:
>
>> Walk Out of class
>> Guest Speaker
>> Study Break
>> Teach-In
>> Study Break
>> Teach-In
>> Study Break
>> Food Break (Pizza)
>> Art Workshop

9. The Palestinian Solidarity Committee planned to lead a walkout protest from the Gregory Plaza (location A below) to the main south lawn (located B below), which the students understood to be a "traditional public forum," where they would spend the afternoon engaged in teach-ins about different topics pertinent to divestment and the history of student social justice movements.

3



10. The night before the event, Palestinian Solidarity Committee leaders received an email from the University which said they would not be allowed to hold the event. CCAFR's report documents that Defendant Sharon Wood sent an email to the Dean's Council early in the morning before the demonstration, sharing that leadership had decided to preemptively bar the demonstration. The communication, written on behalf of the University, declared that any attempt to hold the event would be subject to discipline.

> **The University Provost Wood's Pre-emptive Ban on the April 24 Protest**
>
> On April 24, 2024, at 6.15 am, Provost Wood sent an email message to the Dean's Council, which stated:
>
> "Yesterday, the University learned of a planned event titled "The Popular University for Gaza." The stated purpose of this event was to "occupy the South Lawn" to "take back our university... in the footsteps of our comrades" in recent demonstrations at Columbia, Rutgers and Yale. The event encouraged participants to wear masks in violation of our Institutional Rules.
>
> "This "Popular University" event is part of a national campaign by a non-UT affiliated group explicitly seeking to disrupt university operations nationwide by creating campus encampments. As we have seen over the past few days, these illegal encampments have done just that. They have resulted in significant changes to classes, hundreds of arrests, intimidation, and calls for violence against Jewish students.
>
> "The University is working to ensure this type of disruption doesn't occur on our campus. As part of this effort, last evening, the Office of the Dean of Students informed the event organizer that they could not hold this event on campus. DOS also explained that any attempt to do so would subject the organization and its attending members to discipline under the Institutional Rules."

11. The University's email misconstrued PSC's plans by erroneously conflating their planned demonstration with statements from a national organization called Students for Justice in Palestine (SJP) and other unaffiliated groups.

12. The University had no reasonable basis to conflate PSC's plans with statements made by SJP. The only way to make that mistake is to assume all organizations advocating on behalf of Palestinians are secretly in cahoots, which would not be a reasonable conclusion.

13. PSC at UT Austin is not directed or controlled in any way by SJP. PSC does not coordinate with SJP, nor with any with any similarly named organization at Columbia, Rutgers, Yale, or another university—other universities' "PSC" chapters are no more affiliated with PSC than the "Political Science Society" at one university is affiliated with hundreds of identically named societies across the country. PSC does not pay dues to any national organization. No national organization controls or mandates the tactics of PSC. The only connection between these decentralized groups is their shared adoption of Resolutions expressing certain political beliefs, messages, and viewpoints. Mr. Qaddumi himself is not a member of any SJP or PSC "chapter" other than the separate and independent PSC group

5

at UT Austin, and shares no affiliate with these other organizations besides their shared beliefs.

14. PSC's local and independent leadership decided to use different tactics than the student groups at other universities. Specifically, they decided ***not*** to violate any University rules.

15. Accordingly, the PSC student leaders responded to the University's April 24 email promising the planned march would be a peaceful gathering with educational programming, squarely within the boundaries of normal expressive conduct and University rules. They also clarified they were not organizing or encouraging an overnight encampment. Unknown to them, following University rules was not enough—they would be punished merely for gathering on campus to support a viewpoint the University dislikes.

16. The CCAFR's analysis sets out a compelling explanation that the University sought to suppress PSC's protected speech because of pressure to comply with Executive Order GA-44 from Texas Governor Greg Abbott, which banned certain kinds of speech associated with student organizations supportive of Palestine and critical of Israel. The Order targeted PSC as a "radical" organization and defined as antisemitic several common words and phrases used at PSC's protests and gatherings, such as "from the river to the sea, Palestine will be free." The order created political pressure for UT to stop the protest:

6

> **6. Suppression Based on Political Viewpoint and under Influence of State Executive**
>
> Well prior to the events of April 24, Governor Abbott issued an Executive Order (dated March 27, 2024) commanding the University to:
>
> > "Ensure that these policies are being enforced on campuses and that groups such as the Palestine Solidarity Committee and Students for Justice in Palestine are disciplined for violating these policies."
>
> Then, on April 24, Governor Abbott commented on X: "Arrests being made right now & will continue until the crowd disperses. These protesters belong in jail."
>
> These comments strongly imply that the University's decision to order the police presence and actions on April 24 and April 29 was influenced by the Governor, for the specific purpose of suppressing activities organized by the Palestine Solidarity Committee and Students for Justice in Palestine. Such a motivation is in clear violation of the Institutional Rules, Subchapter 13-100, which states: "The University will not discriminate on the basis of the political, religious, philosophical, ideological or academic viewpoint expressed by any person, either in the enforcement or administration of these rules or otherwise."
>
> There is the further fact that on April 24, after blockading the South Lawn and arresting over 50 persons, the police presence was abruptly removed around 6 pm, and the teach-in resumed on the previously prohibited space. The reason for removing the police has not been explained. One possibility is that the University administration decided that the original response was, indeed, too harsh and unjustified. The other is that the very purpose of the response was to satisfy political pressure, and this purpose had been achieved between noon and 6 pm. The Institutional Rules barring discrimination based on viewpoint clearly prohibit any action to satisfy outside political pressure, from any source.

17. Executive Order GA-44 is facially viewpoint-based. The Order directed Texas public universities to define certain political viewpoints as antisemitic and ban them on that basis. Specifically, the Order defines the statement that the "State of Israel is a racist endeavor" as per se antisemitic, along with any comparison between Israel's current policies and those of Germany during World War II. These prohibitions target views held by many members of PSC and single them out for differential treatment (there is no prohibition, for instance, against saying that the State of *Palestine* is a racist endeavor).

18. The University blocked the PSC protest and disciplined PSC protestors in an attempt to comply with the Order. The intent to comply is evident from the University's subsequent adoption of an "antisemitism" policy conforming to the Order, as well as other modifications of its speech policies following the protests.

19. The unconstitutionality of this action would have been clear to Defendants in their individual capacities. It is obvious that the First Amendment prohibits viewpoint discrimination. It is also obvious that the First Amendment would apply with full force on the South Lawn, given that the Fifth Circuit has found outdoor spaces at the University public forums in the past. *See Justice for All v. Faulkner*, 410 F.3d 760, 769 (5th Cir. 2005). And it was obvious that the Order was viewpoint-based, given Governor Abbott's own statements admitting its purpose was to prevent pro-Palestine protests.

20. The University's discriminatory intent in cancelling the protest is clear given the differential treatment of PSC and Qaddumi compared with other protesters. Indeed, even during this demonstration, "peaceful counter-protesters were present, holding Israeli flags and anti- Palestinian signs. None of them were arrested." (See, Exhibit P-01 at 8.) Had the University intended to apply their policies in a viewpoint-neutral fashion, they would not have subjected *only* a pro-Palestinian protester to discipline.

21. Further, the University treated this demonstration more harshly than past demonstrations similar in place, time, and manner, but differing in viewpoint—showing that the university applies its policies pretextually to regulate and punish some ideas but not others.

22. For example, on August 1, 2020, a demonstration related to the Black Lives Matter movement took place on and around the University of Texas at Austin campus in response to the murder of George Floyd. Between 100 and 150 protesters gathered on the South Lawn, marched across campus, and blocked traffic, while yelling demands and political phrases. Police were not called, no arrests occurred, and the University did not discipline any of the protesters.

23. For another example, on April 11, 2023, an organization called Payment for Placements held a protest on the University of Texas at Austin campus demanding fair compensation

8

for social work students. Approximately 100 students participated in the protest, holding signs, chanting slogans, and listening to speeches. Police were not called, no arrests occurred, and the University did not discipline any of the protesters.

24. On April 8, 2024—sixteen days before the PSC protest—more than 100 protestors gathered to protest the mass firing of staff in DEI offices across the state. Protesters chanted demands, held signs, and stood silently on Speedway, the University of Texas at Austin's main pedestrian thoroughfare. Police were not called, no arrests occurred, and the University did not discipline any of the protesters.

25. On the morning of April 24, 2024, Mr. Qaddumi arrived at campus with other students, to find a considerable law enforcement presence that included university, municipal, and state police.

26. CCAFR's report notes that Defendant Jay Hartzell later asserted that he made the decision to call law enforcement to campus on the basis of PSC's constitutionally protected speech.

> Description of University Administration Justification at Faculty Council Listening Session with UT President Jay Hartzell - Monday May 6, 2024
>
> The arrests of protesters on April 24 and April 29, 2024, generated intense concern among faculty, staff, students, and the wider community. In response, Faculty Council scheduled a "listening session" to enable President Hartzell to hear these concerns on May 6, 2024. At this session, Pres. Hartzell began by showing a series of slides that outlined the process by which the decisions to call in APD, State Troopers, and UTPD on April 24 and April 29 were made. He asserted that "these decisions were mine" but that he had consulted with several others before making a final decision. Regarding April 24, he said that protesters had threatened to "occupy" the campus. As evidence, he displayed an Instagram post from the Palestine Solidarity Committee described above. President Hartzell stated that the term "occupy" indicated that the protestors planned to violate UT rules.

27. In subsequent statements, Hartzell reflected that "[t]he University did as **we said** we would do in the face of prohibited actions" (emphasis added) in not allowing the April 24 demonstration to move forward. On information and belief, Hartzell was acknowledging his part in directing that the demonstration be cancelled and attendees punished.

> **Description of University Administration Justification at Faculty Council Listening Session with UT President Jay Hartzell - Monday May 6, 2024**
>
> The arrests of protesters on April 24 and April 29, 2024, generated intense concern among faculty, staff, students, and the wider community. In response, Faculty Council scheduled a "listening session" to enable President Hartzell to hear these concerns on May 6, 2024. At this session, Pres. Hartzell began by showing a series of slides that outlined the process by which the decisions to call in APD, State Troopers, and UTPD on April 24 and April 29 were made. He asserted that "these decisions were mine" but that he had consulted with several others before making a final decision. Regarding April 24, he said that protesters had threatened to "occupy" the campus. As evidence, he displayed an Instagram post from the Palestine Solidarity Committee described above. President Hartzell stated that the term "occupy" indicated that the protestors planned to violate UT rules.

28. As people gathered at Gregory Gym, Mr. Qaddumi and some of his companions were approached by two University staff members who identified themselves as representatives from the Office of the Dean of Students who told them they could not proceed with the event.

29. The people who had gathered began to disperse but were almost immediately kettled by law enforcement officers. Police on horses blocked the path north and west, so students briefly moved south on Speedway Blvd, crossing 21st street, only to be stopped and surrounded by more officers on bicycles. The students were instructed to disperse, but the officers' positioning in kettling them physically impeded the students' ability to disperse.

30. At that time, the police sought out a mediator from among the crowd, and Mr. Qaddumi volunteered to fill that role. At their request, Mr. Qaddumi shared with the other demonstrators the officers' directives to disperse.

31. However, as police had physically blocked off most routes for dispersal, the crowd ended up reconvening back on Speedway Blvd. Since Mr. Qaddumi was no longer at the head of the crowd, he rushed to the front and then again personally addressed the crowd and expressed the need to disperse and avoid arrest, which they immediately began doing.

32. Mr. Qaddumi continued attempting to relay the officers' directives to the crowd and determine the best route for dispersal. At approximately 12:49 pm, while he was still

10

speaking to officers and relaying their instructions, he was arrested by UT Police Department officers on the accusation of criminal trespass. Even as he was being led away, Mr. Qaddumi continued instructing the crowd to disperse. This incident is corroborated by video evidence.

33. The only criminal accusation against Mr. Qaddumi—trespass—was quickly dropped. Mr. Qaddumi is not being charged for any conduct related to the protest.

34. CCAFR's report concluded that the students demonstrating on April 24, 2024 were not violating any of the University's rules.

35. However, on July 3, 2024, Mr. Qaddumi received a letter from the Office of the Dean of Students alleging that his involvement in the events on April 24, 2024 had violated the University's Institutional Rules[2] and threatening him with discipline. Exhibit P-02. The letter also falsely alleged that Mr. Qaddumi had previously violated the institutional rules—accusations which were never substantiated, formally investigated, nor subject to any disciplinary measures.

36. Mr. Qaddumi responded to dispute the University's accusations as directed, providing critical information about the PSC, his role within the demonstration, and most notably, that the University had erroneously attributed social media posts from other groups to him and PSC.

37. However, on July 25 the University rejected his defense, and tentatively assessed his punishment as suspension for three academic semesters, meaning he "cannot enter UT Austin's campus during this time without written approval from the Vice President for

---

[2] The letter noted Mr. Qaddumi was connected to the PSC and conflated local students work with the national *Students for Justice in Palestine* and events transpiring with students elsewhere in the country.

11

Student Affairs," or "receive credit for academic work during this time." Exhibit P-03. He appealed that conclusion to a hearing.

38. On September 26, a Student Conduct Panel (SCP) found that Ammer Qaddumi violated the University's "Failure to Comply" rule, which (in its present form) prohibits "failure to comply with the directives of any University official(s) acting in the performance of their duties, and who has the authorization to issue such directives." The Panel found Ammer not responsible for engaging in or inciting disruptive conduct, and reduced his punishment to a deferred suspension. The Student Conduct and Academic Integrity (SCAI) appealed.

39. On October 23, the University Appellate Officer rendered a final decision regarding the SCAI appeal, modifying the SCP finding to include that Mr. Qaddumi "failed to comply with directives of law enforcement officers to disperse"—even though video evidence shows him acting on behalf of officers to disperse the crowd—and reversing the SCP's other findings. Concluding that Qaddumi "engaged in" and "engaged in promoting or inciting conduct that interferes with or disrupts" authorized activities, the Appellate Officer placed Qaddumi on a one-year suspension. No other violations were found.

40. This suspension is currently ongoing. It is not subject to appeal. Until August 15, 2025, Mr. Qaddumi will be unable to visit campus, attend classes, or earn credits.

## CAUSES OF ACTION

**COUNT I: Content and Viewpoint Discrimination in Violation of the First Amendment, 42 U.S.C. § 1983**

41. Plaintiff repeats and re-alleges all preceding paragraphs.

42. It is impermissible viewpoint discrimination to prohibit speech when the rationale for the restriction is the speaker's perspective or opinion.

43. It is impermissible content discrimination when the government regulates speech based on the topic or substance of the message it conveys.

44. Defendants restrained Mr. Qaddumi's speech based on its content and viewpoint by cancelling the PSC protest and declaring that any attempt to carry out the event would be subject to discipline.

45. By issuing the directive prohibiting the PSC protest, the University and Defendant Wood made Mr. Qaddumi's protected speech into a violation of its institutional rule against "violating any directive." By punishing Mr. Qaddumi for violating its unlawful directive, the University is enforcing a viewpoint-based regulation of speech.

46. The University has also punished—and continues to punish—Mr. Qaddumi for protected speech and expressive conduct on April 24, 2024, including (a) appearing on campus with and acting as a leader of other PSC members, and (b) expressing his support for the PSC protesters, *even though* he made every effort to comply with the directives of officers in asking the PSC protesters to disband.

47. The institutional rules against "disruption" and "failure to comply" are being used pretextually to punish Mr. Qaddumi for expressing his viewpoint and for his association with PSC. This is evidenced by the differential treatment of PSC and Mr. Qaddumi compared with other protesters (including pro-Israeli counter-protesters present on the same day), as well as the University's compliance with an unconstitutional Executive Order specifically targeting PSC and other pro-Palestinian groups.

48. Moreover, disciplining Mr. Qaddumi for violating the directive is unjustified under the rule's own terms, given that the directive itself was viewpoint-based—no University official "has the authorization" to issue a directive which violates the First Amendment.

49. The University's actions are attributable to Jay Hartzell, the President of the University, who in his official capacity has ultimate authority over decisions to enforce the University's speech and assembly policies, institutional rules, and disciplinary procedures.

50. Hertzel's actions do not satisfy the strict scrutiny to which they are subject. An outdoor common space on a university campus is a quintessential public forum in which the right to free speech may not be curtailed merely to prevent discussion of controversial views.

51. Accordingly, Plaintiff sues Defendant Hartzell in his official capacity as President of the University for declaratory judgment that the disciplinary action against Mr. Qaddumi violated his First Amendment rights, and injunctive relief barring further violation of these rights and reinstating Plaintiff as a student in good academic standing.

52. Plaintiff also sues Defendants in their individual capacities for their actions in canceling the PSC protest, effectuating his arrest, and enabling and encouraging the disciplinary action against him, despite the clear First Amendment violation in each of these acts.

**COUNT II: Retaliation in Violation of the First Amendment, 42 U.S.C. § 1983**

53. Plaintiff repeats and re-alleges all preceding paragraphs.

54. The University's disciplinary action against Mr. Qaddumi is unlawful retaliation against him for exercise of his First Amendment rights, done maliciously with the intent to injure him, and substantially motivated by Mr. Qaddumi's constitutionally protected speech and his association with PSC.

55. The University's suspension of Mr. Qaddumi—even after his suspension was deferred by a student panel—was further intended to chill the speech of other students with similar viewpoints and is likely to have that effect if allowed to continue.

56. The Defendant University should therefore be enjoined from enforcing the suspension or carrying out further disciplinary proceedings against Mr. Qaddumi stemming from the protest. Plaintiff sues Defendant Hartzell in his official capacity for declaratory and injunctive relief against further violation of his First Amendment rights.

## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff requests declaratory and permanent injunctive relief sufficient to end his suspension, bar further disciplinary action against him relating to the PSC protest, and reinstate him as a student at University of Texas at Austin.

## DAMAGES

Plaintiff seeks compensatory and punitive damages.

## NOMINAL DAMAGES

In the alternative, Plaintiff requests an award of nominal damages against Defendants.

## ATTORNEY'S FEES

Plaintiff is entitled to reasonable attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 1988.

## CONCLUSION

For these reasons, Plaintiff respectfully asks this Court to:

1. Enjoin further enforcement of the suspension against him and grant any other appropriate and necessary declaratory and injunctive relief necessary to reinstate him as a student in good academic standing.

2. Issue declaratory judgment that the cancelation of the PSC protest and subsequent disciplinary action against Mr. Qaddumi was illegal viewpoint and content discrimination in violation of the First Amendment.

3. Award damages – compensatory, punitive, and nominal.

4. Award attorney's fees.

5. Award all other relief to which Plaintiff is entitled at law or in equity.

DATED: December 11, 2024

Respectfully submitted,

/s/ Brian McGiverin
Brian McGiverin
Texas Bar No. 24067760
brian@austincommunitylawcenter.org

AUSTIN COMMUNITY LAW CENTER
2080 E. Ben White Blvd, Ste 240 PMB 5960
Austin, TX 78741
Telephone: (512) 596-0226
Fax: (512) 597-0805

ATTORNEY FOR PLAINTIFF

VERIFICATION

I am Ammer Qaddumi, the plaintiff named in this Complaint. I have reviewed the factual allegations in this Complaint, and pursuant to 28 U.S. 1745, I verify under penalty of perjury that the allegations are true and correct.

*Ammer Qaddumi*
Ammer Qaddumi

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on all counsel of record who have appeared in this matter through the Electronic Case Files System of the Western District of Texas.

/s/ Brian McGiverin
Brian McGiverin