UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AMMER QADDUMI, <br> *Plaintiff* <br> <br> v. <br> <br> UT AUSTIN PRESIDENT JAMES E. DAVIS, IN HIS OFFICIAL CAPACITY; <br> *Defendant* | § § § § § § § § § § § No. 1:24-CV-01002-RP |

# ORDER

Before the Court are the objections to disclosure of protected information brought by 34 Non-Party Movants and all related briefing. Dkts. 75; 80; 87; 88; 89; 91; 92; 93; 94; 95; 96; 97; 98; 99; 100; 101; 102; 104; 105; 107; 109; 110; 111; 112; 113; 114; 115; 121; 122; 124; 125; 126; 128; 129; 137. Also before the Court is one Non-Party Movant's motion to withdraw her objection, Dkt. 108. After carefully reviewing the objections, the record, and the relevant law, the Court will deny each of the Non-Party Movants' objections and grant the Non-Party Movant's motion to withdraw.

## I.    BACKGROUND

This case concerns Plaintiff Ammer Qaddumi's arrest during a pro-Palestine demonstration on the University of Texas at Austin ("UT") campus. Dkt. 30. After a Travis County District Court ordered UT to expunge records relating to the arrest of certain other individuals involved in pro-Palestine protests, Defendant James E. Davis notified Qaddumi that UT intended to comply with the state-court orders and Qaddumi responded by moving to preserve those records. Dkts. 52; 54. The Court

1

granted Qaddumi's motion, ordering Davis to preserve the records. Dkt. 69, at 11-12. The Court further ordered the parties to confer regarding procedures for protecting these records and file any appropriate motions for protective order or motions to seal. *Id.*

Qaddumi now seeks two categories of documents and information relevant to the motions now before the Court: (1) disciplinary records of students whom UT punished for participating in the same protest as Qaddumi on April 24, 2024, and/or a related protest on April 29, 2024; and (2) instances where UT applied the same disciplinary rules to other students within the last three years. Dkts. 123, at 2; 123-2, at 6-9; 123-3, at 10-12. Qaddumi states that the second of these requests does not ask for any documents associated with student records, but rather only asks UT to "list the circumstances in which it has applied three specific disciplinary rules." Dkt. 123, at 8; *see* Dkt. 123-3, at 10-11. The parties agree that at least some of this information is covered by the Family Educational Rights and Privacy Act ("FERPA"). *See* Dkt. 123, at 2. Therefore, in accordance with FERPA, Davis notified each of the students whose records Qaddumi seeks—including Non-Party Movants—that his or her records were requested and subject to production pursuant to the Court's order. *See* Dkt. 77. The Non-Party Movants filed motions objecting to their records being released.

The parties proposed, and the Court entered, a protective order requiring that all non-party education records—as defined by FERPA, 20 U.S.C. § 1232g—produced by Davis in response to Qaddumi's discovery requests be designated "Attorneys' Eyes

Only." Dkt. 127, at 4 § 5.a. Any arrest records "(1) ordered expunged by a Travis County District Court, and (2) preserved for the limited purpose of this litigation" pursuant to the Court's order are also designated "Attorneys' Eyes Only" under the protective order. *Id.* at 5 § 6; *see* Dkt. 69.[1]

Under the "Attorneys' Eyes Only" designation, the records will be used "solely for the purpose of preparation, trial, and appeal of this litigation and for no other purpose." Dkt. 127, at 4 § 4; 2 § 1 (defining information designated "Attorneys' Eyes Only" as "Classified Information"). They will be disclosed or made available only to "qualified persons," including only the parties' retained counsel, experts or consultants agreeing to be bound by the protective order, the Court, and litigation support personnel. *Id.* at 2 § 2.a.; 6 § 10.a. The protective order further directs the Clerk of the Court to maintain under seal any of these records when filed under seal, consistent with the Court's sealing requirements. *Id.* at 8 § 16. Finally, the protective order provides that any such records will generally be returned to the producing party or destroyed no later than 120 days after the conclusion of this litigation and any appeal. *Id.* § 17.[2]

## II.   LEGAL STANDARD

A district court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ.

---

[1] The protective order states that to the extent any of these expunged criminal records are also non-party educational records, those records shall be protected under both sections 5 and 6 of the protective order. Dkt. 127, at 4-5 §§ 5, 6.

[2] The protective order provides that the manner of any use of these records at a hearing or during trial will be determined by the Court at a later time. Dkt. 127, at 8 § 15.

P. 26(c)(1). This rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

FERPA prohibits the release of educational records containing "personally identifiable information" absent written consent from the student or his or her parents, a judicial order directing such disclosure, or a lawfully issued subpoena. 20 U.S.C. § 1232g; 34 C.F.R. § 99.3. When disclosure is pursuant to a judicial order or subpoena, parents and students must be "notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution." 20 U.S.C. § 1232g(b)(2)(B).

### III.   DISCUSSION

The Non-Party Movants' objections fall into three general categories, with some overlap: objections arguing that the Movant's records are irrelevant to the litigation; objections that no Court order exists to satisfy the FERPA exception at 34 C.F.R. § 99.31(a)(9)(i) & (ii); and objections stating generally that disclosure of the Movant's records is prohibited by FERPA. The undersigned addresses each in turn.

First, the Court overrules any Non-Party Movant's objection based on the argument that the records sought are irrelevant to this case. Parties to federal litigation are entitled to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Many of the Non-Party movants argue that their records are not relevant to this litigation. Dkts. 75; 80; 88; 89; 92; 93; 94; 95; 97; 98; 100; 102; 104; 105; 109;

4

110; 111; 114; 122; 124; 125[3]; 128; 129. Yet any disciplinary records relating to the pro-Palestine demonstrations are plainly relevant to Qaddumi's case, and disciplinary records unrelated to the demonstrations but applying the same specific disciplinary rules in different circumstances may be relevant to showing viewpoint discrimination. *Cf. Heaney v. Roberts*, 846 F.3d 795, 802 (5th Cir. 2017) ("Viewpoint discrimination exists 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" (quoting *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 329 (1995)). The Court therefore declines to grant any objection on the grounds that the records are not relevant to this case.

While the Non-Party Movants are concerned about their student information becoming public, the Court is satisfied that the protective order in this case is designed to handle precisely this situation where very sensitive information is relevant to a lawsuit and a small number of people must be able to view that information to conduct the case. As outlined above, the terms of the protective order have been carefully negotiated by the parties and approved by this Court to ensure that sensitive material remains confidential. That confidentiality continues even after the case is over. Dkt. 127, at 8 § 18. A violation of the protective order in this

---

[3] In this objection, the Non-Party Movant requests that the Court dismiss the Non-Party Movant as a plaintiff in this case. Dkt. 125, at 2. The Non-Party Movant asserts that the requested records are protected under FERPA. *Id.* The Movant also states that "[e]ven if Movant were a party," compelling the requested records would not be "proportional to the needs of the case." *Id.* As the Non-Party Movant is not a plaintiff in this case, the Court construes this motion as objecting to the disclosure of the Non-Party Movant's records on relevance and FERPA grounds.

case, whether intentional or inadvertent, would merit severe consequences from the Court. *See Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012) (holding that a district court has authority to impose sanctions for inadvertent violation of a protective order governing confidential material disclosed in discovery). The Court finds that this adequately balances the Non-Party Movants' privacy interests with the parties' need to discover material that is relevant to their claims and defenses.

The Court also overrules any Non-Party Movant's objection on the grounds that FERPA does not permit use of the records in this case under the judicial-order exception. *See* Dkts. 93; 94; 95; 97; 104; 105; 111; 115; 124; 125. An educational institution "may disclose personally identifiable information from an education record of a student without the consent [of a student or parent]" if the disclosure "is to comply with a judicial order or lawfully issued subpoena," and once "the agency or institution makes a reasonable effort to notify the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek protective action." 34 C.F.R. § 99.31(a)(9)(i) & (ii). In other words, once an educational institution "makes a reasonable effort" to provide notice to a student before producing their records in response to a court order or subpoena, the educational institution has satisfied its obligations under FERPA.

Contrary to the Non-Party Movants' assertions that no court order permits disclosure after notifying students, the Court's protective order requires Davis to produce the records "if a timely objection is not submitted by the affected student and

sustained by the court." Dkt. 127, at 4 § 5.c. The Court now declines to sustain any objections. Therefore, Davis is permitted under FERPA—and required by the Court—to produce the records at issue in the Non-Party Movants' objections.[4]

For the same reasons given above with respect to relevance and objections based on specific FERPA exceptions, the Court overrules any Non-Party Movant's general objections to the use of his or her records as barred under FERPA. *See* Dkts. 87; 96; 99; 101; 107; 112; 113; 121; 126; 137.

## IV. CONCLUSION

**IT IS ORDERED** that Non-Party Movants' objections are **DENIED**. Davis is **ORDERED** to produce the requested records to Qaddumi **on or before November 14, 2025**.

**IT IS FURTHER ORDERED** that the Non-Party Movants' motion to withdraw the Movant's earlier objection, Dkt. 108, is **GRANTED**. The Non-Party Movant's objection, Dkt. 91, is **HEREBY WITHDRAWN**.

SIGNED October 29, 2025.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE

---

[4] Some of the Non-Party Movants filed their objections before the Court entered the protective order. Certain of those Non-Party Movants requested that, in the event the Court entered an order requiring Davis to produce the records after the filing of their objections, the Movants be granted another opportunity to seek protective action at that time. *See, e.g.*, Dkts. 94; 95; 97 (citing 20 U.S.C. § 1232g(b)(2)). The Court finds that FERPA requires only that "students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution," and that UT has complied with FERPA by providing notice before producing any records pursuant to the Court's order, Dkt. 127. *See* 20 U.S.C. § 1232g(b)(2). Additionally, the Court again finds that the protective order in this case is sufficient to protect the Non-Party Movants' privacy interests.